66 F.3d 338
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Anthony Ray JENKINS, Plaintiff-Appellant,
v.
(NFN) KIMERLY, Probation Officer, Defendant-Appellee.
 No. 95-3077.
 United States Court of Appeals,
 Tenth Circuit.
 Sept. 15, 1995.
 
 LOGAN, Circuit Judge.
 Before TACHA, LOGAN and KELLY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument. We grant plaintiff Anthony Ray Jenkins' motion for leave to proceed in forma pauperis on appeal without payment of costs or fees in order to reach the merits of his claim. Because we construe his claim as one also seeking release from prison we grant a certificate of probable cause.
 
 
 2
 Jenkins filed a 42 U.S.C.1983 complaint against a community corrections officer[2] challenging the revocation of his assignment to community corrections and the revocation of his appeal bond. These actions required him to be incarcerated under his state court sentence for possession of cocaine and marijuana.
 
 
 3
 Insofar as Jenkins seeks relief from imprisonment his complaint is properly characterized as an application for a writ of habeas corpus under 28 U.S.C. 2254; inasmuch as it seeks monetary damages it is properly characterized as a 1983 claim. We treat the petition as a hybrid containing both types of claims.
 
 
 4
 The district court ordered a Martinez v. Aaron, 570 F.2d 317 (10th Cir.1978), report to ascertain whether there was any basis for the claims made in conclusory fashion by the complaint. Jenkins does not contradict the contents of that report. It details that Jenkins was convicted on state court charges for possession of cocaine and possession of marijuana, for which he was sentenced to three to ten years in custody of the secretary of corrections and one year in the county jail. The court denied probation but assigned Jenkins to community corrections for a two-year period. The assignment to community corrections stated certain conditions of supervision, including a prohibition against Jenkins' possession of firearms. Jenkins refused to agree to that condition. His stated basis for refusing the condition was that he was appealing his convictions.
 
 
 5
 On the same day that the county attorney filed a motion to revoke Jenkins' community corrections assignment, the state district court set an appeal bond and, after Jenkins signed the bond, released him from custody. The court did not rule on the community corrections revocation petition immediately, but allowed Jenkins to remain on bond because his appeal was pending. During this period, in December 1993, Jenkins was charged with abuse of a child in another state court action, and released on bond in that case also. In January 1994 Jenkins confronted a school counselor who apparently had been involved in the child abuse charge and struck him in the face. Jenkins was charged with aggravated intimidation of a witness and battery for this incident. The jury trial on this last charge ended in a mistrial when the jury was unable to reach a decision; the prosecutors declined to reprosecute. Following that series of events, the state filed a motion to revoke Jenkins' appearance bond in both criminal cases. After hearing evidence the court ordered bond revoked and remanded Jenkins to the custody of the Secretary of Corrections.
 
 
 6
 Thereafter the Kansas Court of Appeals affirmed Jenkins' convictions for possession of marijuana and cocaine, and the Kansas Supreme Court denied review. Jenkins was convicted of the child abuse charge and sentenced to serve forty-one months consecutively to his marijuana and cocaine sentence. The motion to revoke the community corrections assignment was scheduled for hearing on January 25, 1995; although the record does not contain the court's finding it must have ordered revocation because defendant is currently serving prison time.
 
 
 7
 Jenkins' arguments on appeal relate more to the revocation of his bonds than to the community corrections revocation. He apparently believes that the mistrial on the charges of intimidation of a witness and battery required reinstatement of his bond and release, or reinstatement in the community corrections program despite his unwillingness to abide by its requirements. He appears to believe that he was somehow placed in double jeopardy when his bond was revoked under these circumstances. What that argument overlooks is that being charged with an independent crime while out on bond--either the crime of abuse of a child, on which he was later convicted, or intimidation of a witness and battery, on which he obtained a mistrial--is a standard basis for revocation of bond. Of course, he has no current right to release because of his felony convictions for which he was sentenced to prison.
 
 
 8
 We are in full agreement with the district court that there is no double jeopardy or other constitutional violation involved in the proceedings described either in the revocation of the community corrections assignment or the revocation of the bond.
 
 
 9
 The instant case is only one of thirty-three appeals taken in a seven-month period in separate cases Jenkins filed. We are disposing of ten of those appeals this day. Almost all arise out of the sequence of events recited above, and none that we have examined have merit. The picture that emerges is a now forty-year-old man, apparently a former athlete weighing over 300 pounds, who appears to believe he is entitled to possess user quantities of cocaine and marijuana. He apparently uses his fists on people that cross him: the marijuana and cocaine charges on which he was convicted arose out of his arrest for allegedly beating up another man; he has two prior misdemeanor convictions for battery on law enforcement officers; he struck the school official who testified in his child abuse case. He believes he did no wrong in "disciplining" his eleven-year-old child by beating him so severely with an extension cord that the boy's back was badly scarred (apparently there were scars from prior beatings also). He is a black man living in a rural community where there are few blacks; his prosecutors, judges, and apparently the jurors, were white. He argues that his incarceration as a result of their actions was the result of prejudice and subjected him to slavery.
 
 
 10
 Jenkins is totally uncompromising, as evidenced by his refusal to agree to give up guns when he must have known that, regardless of his agreement, as a convicted felon--even with an appeal pending--he was prohibited by law from possessing guns. See 18 U.S.C. 922(g)(1). He rejected a plea bargain that would have dropped one case completely and resulted in only a thirty-day jail term because it would have required him to drop an appeal. This was a deal his lawyer informed him was the best he had ever seen offered considering the circumstances; his lawyer informed him he had only a one percent chance of winning his appeal (and he did not win). The result is tragic for Jenkins, his family, and the larger community which must pay the costs of his imprisonment and help support the family now deprived of his income-earning capacity.
 
 
 11
 In prison it appears Jenkins has discovered a means of venting his anger and lashing out at the system: filing in forma pauperis habeas and 1983 cases against any and every person or entity he thinks has any role in imposing upon him the consequences of his actions. This is evidenced by his many lawsuits, and thirty-three appeals filed in this court in seven months.
 
 
 12
 As the assigned guardians of the law we judges are exceedingly reluctant to deny access to the court system to any litigant. We process a large and increasing number of habeas cases because, although nearly all are meritless, occasionally there is uncovered an unlawful act to be corrected. We process a large and increasing number of 1983 civil rights suits brought by indigent prisoners. Handling these cases often seems to us judges like having to eat a ton of sawdust without butter. But occasionally we see a case egregious enough to warrant relief, and we recognize that such suits provide a balance wheel that helps prevent abuses of the imprisoned by those charged with their care.
 
 
 13
 "The goal of fairly dispensing justice ... is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous requests." In re Sindram, 498 U.S. 177, 179-80 (1991). We do not have to tolerate abuse of the system; we have inherent power to restrict a person's ability to pursue abusive litigation.
 
 
 14
 Only because Jenkins has not been warned previously, and has not been filing these suits for any extended time, do we stop short of restricting his access to the courts. But we issue this warning: we will not tolerate vexatious, harassing, duplicative lawsuits in which there can be no objective good faith expectation of prevailing. Should Jenkins continue to file suits arising out of the facts recited in this opinion--suits that do not correctly identify defendants or sue those clearly immune, suits that recite a litany of constitutional claims without supporting facts--we will uphold any reasonable restriction the district court may impose on his pro se filings.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Plaintiff purports to name a community corrections officer Kimerly as defendant. There is no such person, but because he apparently is attempting to name the official in charge of community corrections we treat the case as naming an appropriate defendant, as did the district court